CASE 49.—ACTION ON TWO PROMISSORY NOTES BY MAR-
GARET W. ROBERTSON AND OTHERS AGAINST
B. B. BEMISS AND OTHERS.—January 22.

# Bemiss, &c., v. Robertson, &c.

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

From the judgment both parties appeal. Affirmed
on the original and reversed on the cross appeal.

Principal and Agent—Investing Money—When Agency Ceases—
Liability of Principal.—Bemiss, &c., executed bonds for land
sold at decretal sale, which Potter signed as surety, on which
the surety paid certain sums for which Bemiss, &c., executed
their notes to Potter as agent, which he assigned to Mrs.
Robertson who was a depositor in the bank of Potter, and
who had authorized Potter to invest her money on deposit.
in good securities. Checks were drawn on Mrs. Robertson
for the amount of the two notes and credited to the account
of Potter, (who was cashier of the bank) and who gave his
individual check to the commissioner for the amount. Held,
that Potter was the agent of Mrs. Robertson to invest her
money, but his agency ceased when he took the notes of
Bemiss, &c., and transferred the amount of them from her
account to his.

W. B. GAINS, attorney for appellant.

### POINTS AND AUTHORITIES.

1. All errors that may have been committed by the court
below, except as to the right of set-off, are specifically and
expressly waived by appellant.
2. A note executed prior to the Negotiable Instrument act of
1904, is subject to all defenses.
3. The original obligee, being the holder, failure of considera-
tion is a good defense.

4. Payment to Potter, when the contract was for payment to Rodes is a failure of consideration.

5. The note executed prior to the passage of the act is subject to be credited by the amounts held by the original obligee, before notice of assignment, as against the assignee, for a valuable consideration without notice. (Section 474, Kentucky Statutes.)

6. The principal is chargeable with the knowledge of the agent, the appellee was not holder in due course because she took with notice of the infirmity. (Article 4, section 4, Negotiable Instrument Act; Richie v. Cralle, &c., 22 Ky. Law Rep., 160.)

C. U. McELROY, attorney for Mrs. Robertson.

To epitomize and compress the whole issue and argument into a "nut shell," I respectfully and earnestly insist,

1st. J. E. Potter was only appellee's agent to invest the amount of the notes in suit in those notes, and, when that was done his agency for her, ended absolutely and finally.

2nd. J. E. Potter was the agent of the appellants to raise the money to pay off the sale bond, was their agent to pay off the bonds, was their agent to conduct the whole transaction from "end to end."

3rd. The minute this money came into Potter's hands, in law it came into appellant's hands, and the title to the money passed at once from appellee to appellants, and so remains to this day.

4th. As a necessary and inevitable sequence, as appellants got all the money their notes called for, there was of course, no failure of consideration of the notes executed by appellants.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER.

On September 28, 1903, the appellants purchased at decretal sale a tract of land in Warren county, and executed to the master commisisoner two bonds for the purchase money, of $4,000 each, due, respectively, on the 28th day of March, 1904, and on the 28th day of September, 1904. J. E. Potter became the surety in both the bonds. When the first bond fell due, the surety, Potter, paid to the commissioner $1,942.51, the amount necessary to pay the heirs who did not purchase the land, their interest in the proceeds, and

appellants executed to Potter. their note for this amount payable to him "as agent." $630.95 of this fund was due to some of the infant heirs, and their guardians refused to accept the money due them, as under the terms of sale he was not required to receive it at that time; and thereupon the commissioner paid back to Potter the sum due the infants. When the bond payable in September, 1904, became due, Potter also paid to the commissioner $1,733.05, the amount necessary to satisfy it, less $835.65 due the infants, which was retained by Potter; the guardian refusing to receive it. On the date of the payment to the commissioner, appellants executed to Potter as agent their note for $1,733.05. In 1906 the appellee Mrs. Robertson, to whom the notes had been assigned by Potter, brought suit on them. The appellants resisted the collection of $630.95 on the first note, and $835.65 on the second note. Upon the pleadings and evidence the case was submitted to the chancellor, who allowed appellants credit by the $630.95, but refused to give them credit for the $835.65. From this judgment, both parties appeal.

The evidence presented, in substance, the following state of facts: J. E. Potter was a banker in Bowling Green, and when the bonds and notes were executed was considered by every person to be a man of wealth. Among the depositors in his bank was the appellee Mrs. Robertson, who had authorized Potter to invest her money on deposit in his bank in good securities. Checks were drawn on her account for the amount of the two notes executed by appellants, and the same was credited to the account of Potter, who gave his individual check to the commissioner for the amount paid him, and retained as a part of his account the amount due the infants, the account being marked to show that it was the "Bemiss account," and the notes

executed by appellants payable to Potter as agent were really owned by Mrs. Robertson, as Potter as agent had simply loaned her money to appellants. Some time after this, and while the money due the infants was in the bank to the credit of Potter, the bank failed. The result of the failure was that the land purchased by appellant was charged with the amount due the infants, as it had never been paid them, and the bonds to this extent were unsatisfied. In their defense to the suit on the notes, appellants set up that there was a failure of consideration to this extent. The evidence discloses that, previous to the execution of the bonds, appellants had made arrangements with Potter to not only become their surety, but to raise the money to pay the bonds when they fell due. Aside from the fact that they signed the notes sued on, appellants took no part in securing the money, and knew little, if anything, about whose money it was, or how it was obtained, trusting the entire matter to Potter. At the time the notes were executed, Mrs. Robertson was absent from the State, and knew nothing of the transaction until the notes were assigned her.

It is the contention of appellants that, in advancing the money, Potter was acting as the agent of Mrs. Robertson, and the transaction must be treated as if conducted by her individually, and, therefore, as she retained and never paid on or for the notes the amount due the infants, they should be credited by these sums; or, if this position is not tenable, that Mrs. Robertson was the assignee of Potter, and therefore in no better position than Potter, would have been if he had attempted to collect the notes, as appellants could assert any defense against Mrs. Robertson, assignee, that they could against Potter, the assignor. For the appellee it is said that, under

the arrangement and understanding between appellants and Potter, he was to look after the payment of the bonds raising the money for that purpose, and therefore was at all times their agent, and, although he may have advanced the money of Mrs. Robertson as her agent, yet his agency for her ceased when the money obtained from her was credited to his account, and that, after the money was so credited, he held it as the agent of appellants, and the loss sustained must be suffered by them.

This is one of the hard cases that the mistakes or misfortunes of people make it necessary for the courts to decide. A judgment in favor of either party will result in loss to an innocent person. But, as in all cases of this character, where a loss must fall upon one of two persons, the burden must be borne by that one whose confidence or mistake was the proximate cause of it. There is no doubt that in lending the money and taking the notes Potter was acting as the agent of appellee. It is also undenied that it was the understanding of appellants with Potter when he signed the bonds that he should furnish or raise the money with which to pay them, and in obtaining money for this purpose he was acting as the agent of appellants. The principal question therefore is, when did his agency for Mrs. Robertson cease? We are of the opinion that it terminated when he took the notes and transferred the amount of them from her account to his. That ended his connection with the transaction so far as she was concerned. After that time Mrs. Robertson had no interest in the matter. Unquestionably the money was received by Potter as the agent of appellants. The mere circumstance that the transaction only involved the transfer of money from one account to

another cannot affect the question. The result was the same as if Mrs. Robertson had paid to Potter in cash the amount of the notes, and Potter had placed the cash to his credit in the bank. It cannot be maintained that in paying the bonds or in receiving the money for that purpose Potter was acting as the agent of Mrs. Robertson. Appellants intrusted Potter with authority to obtain the money for them. They executed notes to him as agent, and the money received on the notes, although placed to his account, was designated as the "Bemiss account," and was held by him as agent for appellants. The assignment of the notes by Potter to Mrs. Robertson does not enter into the case. They were really her notes when taken by Potter, her agent.

The case of Ritchie v. Cralle, 108 Ky., 483, 56 S. W., 963, 22 Ky. Law Rep., 160, is not applicable to the facts of this record. In that case no question of agency was made or discussed. In the case at bar the pivotal point is one of agency.

Having reached the conclusion that Potter was solely the agent of appellants the moment the money was paid to him by Mrs. Robertson, it necessarily follows that the whole loss must fall upon the appellants.

Wherefore the judgment is affirmed on the original, and reversed on the cross appeal, with directions to proceed in conformity with this opinion.

Petition for rehearing by plaintiff overruled.